**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**ALLEN L. BEACH,**

Plaintiff,

v.

**YELLOW FREIGHT SYSTEM, INC.,**

Defendant.

Civil No. 00-754 (JGL)

**O R D E R**

---

APPEARANCES

Jeffrey R. Anderson, Esq., and Barbara J. Felt, Esq., on behalf of Plaintiff.

Steven L. Brenneman, Esq., Andrew R. Clark, Esq., Teri F. Thompson, Esq., and Amanda C. DuPont, Esq., on behalf of Defendant.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Plaintiff's Petition for Costs and Fees (Doc. No. 160). Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties to this action voluntarily waived their rights to proceed before a judge of the United States District Court and consented to have the undersigned United



FILED 12-10-01
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

States Magistrate Judge conduct all proceedings in the case, including entry of a final judgment.

## I. FACTS

In this case, Plaintiff Allen L. Beach ("Beach") originally charged his employer, Defendant Yellow Freight System, Inc. ("Yellow") with same-gender sexual harassment under the Minnesota Human Rights Act ("MHRA") and with retaliation/reprisal, negligent retention, negligent supervision, and defamation under Minnesota common law. Beach eventually withdrew his claim of defamation. Beach's claims of retaliation/reprisal, negligent retention, and negligent supervision were dismissed on summary judgment. (Doc. No. 57.) Beach's same-gender sexual harassment claim under the MHRA was then tried without a jury before this Court. Judgment was entered in favor of Beach. In this Court's Findings of Fact, Conclusions of Law, and Order for Judgment on October 31, 2001 the Court awarded Beach $36,920.00[1] and ordered Beach's attorneys to submit a petition for attorneys' fees. The MHRA gives the Court discretion to award reasonable attorneys' fees and costs to a prevailing party. See Minn. Stat § 363.14, subd. 3. Beach's Counsel have submitted a petition for such fees and Yellow has submitted a response.

---

[1]Beach sought $708,500.00 in damages.

## II. DISCUSSION

Beach seeks attorneys' fees in the amount of $357,064.25 and costs in the amount of $18,514.13. Beach argues that he is entitled to this award because his Counsel ("Counsel") undertook the case on a contingent fee basis, the case involved extensive litigation, and Beach achieved a favorable result. Beach further asserts that Counsel's hourly billing rates, number of hours billed, and requests for costs are reasonable.

Yellow responds that Counsel's billing rates and number of hours billed are "outrageous" and out of line with the results obtained in the case. Specifically, Yellow argues that Counsel is billing for time spent on claims which were dismissed on summary judgment, that Counsel's bills are imprecise and duplicative, and that Counsel is requesting reimbursement for inappropriate costs.

### A. Attorneys' Fees

Awarding attorneys' fees to a prevailing party in civil rights cases serves the dual purpose of encouraging victims of civil rights violations to bring suits and encouraging competent attorneys to undertake representation of these clients. See Sigurdson v. Isanti County, 386 N.W.2d 715, 722 (Minn. 1986). Attorney fee awards should be high enough to encourage effective and skillful counsel to take these cases, but should not provide counsel with a "windfall." Blum v. Stenson, 465 U.S. 886, 897 (1984); Shepard v. City of St.

Paul, 380 N.W.2d 140, 143 (Minn. Ct. App. 1985). There is no set formula for determining what attorney fees are "reasonable" under the MHRA. However, the same standards that govern an award of attorneys' fees under federal law govern such an award under the MHRA. See Anderson v. Hunter, Keith, Marshall & Co., Inc., 417 N.W.2d 619, 628 (Minn. 1988).

Minnesota has adopted the federal lodestar analysis for calculation of attorneys' fees. See id. (citation omitted). The seminal case on attorneys' fees in civil rights cases is Hensley v. Eckerhart, 461 U.S. 424 (1983). The Hensley Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433; Keslar v. Bartu, 201 F.3d 1016, 1017-18 (8th Cir. 2000). The result of this calculation is called the "lodestar" figure. See Anderson, 417 N.W.2d at 628.

The district court has broad discretion regarding whether or not to award attorneys' fees. See Keslar, 201 F.3d at 1017. When calculating the lodestar figure, the Court must not accept the reasonableness of a claimant's fee petition "at face value." Anderson, 417 N.W.2d at 628-29. Rather, the Court must scrutinize the claimed "hours expended" for reasonableness. Id. See also Keslar, 201 F.3d at 1016-18 (affirming district court's award of approximately eight percent of the requested attorneys' fees when petitioning attorney had "lost all sense of proportion and spent too much time and money

on what was only slightly more than a run-of-the-mill [sexual harassment] case"). The most critical factor in determining the reasonableness of attorneys' fees is the degree of a plaintiff's overall success.[2] See Hensley, 461 U.S. at 436; Ryther v. KARE 11, 864 F. Supp. 1525, 1532-33 (D. Minn. 1994).

Attorneys cannot be compensated for work on unsuccessful claims. See Hensley, 461 U.S. at 435. However, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorneys' fee reduced simply because the district court did not adopt each contention raised." Id. at 440; Ryther, 864 F. Supp. at 1533. Where a plaintiff has received excellent results, attorneys should be compensated for their full fee. See Hensley, 461 U.S. at 436. If, however, the plaintiff has received only limited success, it may be inappropriate to compensate attorneys for time expended on the litigation "as a whole." Id. This is true even when unsuccessful claims are interrelated and nonfrivolous. See id. The Court has discretion to determine if the requested number of hours should be reduced or if the overall award should be reduced to account for limited success. See id. at 436-37.

[2]The Hensley Court cited twelve factors which may be considered when determining an appropriate fee award. The Court stated that many of these factors will be "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." Hensley, 461 U.S. at 430-31 n.3, 434 n.9.

Beach bears the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Id. Where Beach's documentation is inadequate to allow the Court to conduct a meaningful review, the Court has discretion to reduce the total award. See id. at 433; Baufield v. Safelite Glass Corp., 831 F. Supp. 713, 722 (D. Minn. 1993) (holding that a fifteen percent reduction in lodestar amount was appropriate when counsel submitted imprecise documentation). Beach may not be compensated for billing hours which are vague, excessive, redundant, or unnecessary. See Anderson, 417 N.W.2d at 629; Kennedy v. St. Paul, No. CS-99-259, 2000 WL 290425, at *5 (Minn. Ct. App. Mar. 21, 2000) (unpublished opinion).

### 1. Whether Counsel's Requested Billing Hours are Reasonable

Beach's fee petition requests compensation for 777.35 attorney hours at billing rates ranging from $240.00 an hour to $475.00 an hour. Beach also requests fees for 400.25 paralegal hours at the rates of $125.00 and $130.00 an hour, and 123.27 law clerk hours at the rate of $100.00 an hour. Multiplying these hours by their respective rates yields a lodestar amount of $357,064.25 in attorneys' fees. Beach has submitted an accounting of time charges in this case. This accounting purports to exclude time for hours which are excessive, redundant, or otherwise unnecessary. In addition, Beach

contends that wherever appropriate, tasks were assigned to paralegals or law clerks, which kept the billing totals as low as possible.

Yellow responds that Beach's fee petition includes entries which are too ambiguous to support reimbursement; are related to noncompensable claims; or are duplicative, inordinate, or related to hours not reasonably worked. Specifically, Yellow takes issue with the following items. First, Yellow challenges Counsels' hours before Judge Magnuson's ruling on Yellow's motion for summary judgment. Yellow argues that the hours claimed do not differentiate between hours worked on Beach's one successful claim and those worked on the four claims which were ultimately dismissed. The total number of hours requested for this time period is 579.80 hours. Second, Yellow challenges Mr. Jeffery Anderson's hours related to "trial prep." Yellow argues that these vague entries do not allow the Court to determine whether Beach seeks to recover for noncompensable tasks, duplicative time, or excessive, unreasonable use of time. The total number of hours requested for this time is 64.50 hours. Third, Yellow challenges the amount of paralegal time billed for deposition summaries. Yellow argues that these vague entries do not allow the Court to determine whether Beach seeks to recover for noncompensable tasks, duplicative time, or excessive, unreasonable use of time. The total number of hours for this item is 96.25 hours. Fourth, Yellow challenges Mr. Anderson's, Ms. Barbara Felt's, Ms. Francis Baillon's, and Mr. Brandt Penney's hours for

the four day trial. Yellow argues that the time billed by Ms. Felt, Mr. Baillon, and Mr. Penney was excessive, unnecessary, and duplicative. Beach requests 106.50 hours for this item. Fifth, Yellow challenges Ms. Felt's hours related to preparation of Beach's fee petition. Yellow argues that, except for differences in hours and increased billing rates, the instant petition is identical to the fee petition submitted by Counsel in the Jones case.[3] Beach requests 15.50 hours for this item.

The Court agrees that a reduction in fees is necessary. However, the Court declines to discount the fees to the extent requested by Yellow.

**a. Counsels' Hours Through May, 2001**

Yellow argues that an eighty percent reduction in the number of hours billed is appropriate for all time billed before Judge Magnuson's May 28, 2001 ruling on Yellow's motion for summary judgment. Yellow asserts that such a reduction is appropriate because Beach withdrew his defamation claim during this time and Yellow was granted summary judgment on three of the four remaining claims. Yellow correctly states that none of Counsel's entries before that date make any attempt to identify which of Beach's five original claims are represented by any given entry. Counsels' bill includes multiple entries under such headings as: "brief," "draft complaint," "discovery,"

---

[3]Beach's Counsel also represented the plaintiff, David Jones, in Jones v. Yellow Freight, No. 19-C7-98-7880 (Minn. 1st D. Nov. 9, 1999) (Order & Order for J.).

"interrogatory answers," "document production," multiple telephone calls and conferences with "client," "organize file," and "depo[sition]." However, there are no explanatory statements in the entries regarding what was discussed in conference; what discovery issues were the subject of the interrogatories, documents, or depositions; or what claims were being crafted during drafting of the complaint. This kind of imprecision makes it impossible for the Court to determine which hours are reasonably compensable as related to the claim upon which Beach ultimately prevailed.

In light of this imprecision, the Court will decrease the hours billed before May 28, 2001, the date of the summary judgment ruling, by forty percent. See H.J. Inc. v. Flygt Corp., 925 F.2d 257, 259 (8th Cir. 1991) (affirming a twenty percent discount in claimant's lodestar figure because billing entries included such vague terms as "legal research," "trial prep," and "met with client"). Counsel's subtotal for professional services rendered through the month of May 2001 was 579.80 hours.[4] This will be reduced by 231.92 hours. The reduction represents the Court's best inference at an appropriate decrease for any work done on Beach's defamation and retaliation/reprisal claims, claims which are distinct from the claim upon which Beach ultimately prevailed. See Hensley, 461 U.S. at 433; Ryther, 864

[4]Mr. Anderson, 34.50 hours; Ms. Felt, 275.90 hours; Ms. Mullen, .90 hours; Ms. Baillon, .35 hours; Ms. Kluessendorf, 217.00 hours; Mr. Penney, 51.15 hours.

F. Supp. at 1532-33. Beach's defamation claim was withdrawn during briefing on the motion for summary judgment and is distinct from Beach's other claims. Beach's retaliation/reprisal claim is also distinct from the remaining claims. Whether or not Yellow allegedly retaliated against Beach because he complained about sexual harassment is not related to whether the harassment existed in the first place or whether Yellow knew or should have know about it. Indeed, the two claims are so unrelated that this Court refused to consider evidence related to retaliation/reprisal at trial.

Although Beach did not ultimately prevail on his negligent retention and negligent supervision claims, these claims are interrelated to Beach's same-gender sexual harassment claim and arise from the same series of facts. Time spent on these claims is, therefore, compensable. See Jenkins v. Missouri, 838 F.2d 260, 264-45 (8th Cir. 1988), aff'd, Missouri v. Jenkins, 491 U.S. 274 (1989); Ryther, 864 F. Supp. at 1532-33. Therefore, the number of compensable hours through May 2001 is 347.88. The reduction in hours will apportioned between the attorneys' and paralegals' billed hours for this time period.

**b. Mr. Anderson's Hours From June, 2001 Through September 2001**

Mr. Anderson's hours from June 2001 through September 2001 will be reduced because they are too vague and imprecise to allow the Court to

determine if they are legitimate charges. See Baufield, 831 F. Supp. at 722 (reducing the lodestar amount by fifteen percent, even though most of the billing entries contained adequate documentation). In fact, of thirty entries for the period of time from the motion for summary judgment until the start of the trial, only eight contain any attempt at meaningful explanation. Most of Mr. Anderson's entries fall under the broad headings of "trial prep." and "prepare for trial." These entries are too imprecise for the Court to determine whether Counsel is requesting noncompensable fees. The Eighth Circuit has specifically held that it is appropriate to reduce a requested lodestar amount when claimants submit itemized bills with vague, unhelpful terms such as "trial prep." See H.J. Inc., 925 F.2d at 260. Such terms do not allow the Court to screen billings for duplicative and unnecessary charges. It is appropriate to construe vague billing statements against the fee petitioner. See H.J. Inc., 925 F.2d at 261. Mr. Anderson requests compensation for 64.50 hours of time billed as "trial prep" or "prepare for trial." These hours will be decreased by fifteen percent. Thus, Mr. Anderson's compensable hours for this period of time are 54.80. This represents a reduction of 9.70 hours for hours billed from June 2001 through September 2001.

c. **Ms. Felt's Hours From June 2001 to September 2001**

In contrast to Mr. Anderson's billing entries, the majority of Ms. Felt's entries are more precise and amenable to review by this Court. However, some of her entries suffer from the same imprecision as Mr. Anderson's entries. Specifically, Ms. Felt has billed for 39.20 hours of "trial prep." These hours will be reduced by fifteen percent for a total of 33.30 hours. In addition, Ms. Felt's billing includes two entries of which some part is related to preparation for a jury trial: 1.90 hours on July 6, 2001 and 8.30 hours on July 24, 2001. On these dates, Beach's only remaining claim was his claim of same-gender sexual harassment under the MHRA. MHRA claims must be tried to a "judge without a jury." Minn. Stat. § 363.14, subd. 2. To this Court's knowledge, the parties always intended Beach's MHRA claim to be tried to the Court. Therefore, any time spent preparing for a jury trial cannot be compensated. Thus, these two entries will be reduced by a total of 2.50 hours. Therefore, Ms. Felt's hours for the period of time from June 2001 through September 2001 will be reduced by 8.40 hours.

d. **Whether Paralegal Time Was Excessive**

Yellow argues that many of Beach's requested paralegal hours suffer from the same imprecision as Mr. Anderson's billing. Yellow asserts that due to this imprecision, one cannot determine if the bill seeks recovery for

duplicative, excessive, or unreasonable time. Specifically, Yellow takes issue with entries labeled "deposition summary" or "summarize depositions." The Court agrees that such generic labels do not allow for meaningful review. The Court cannot determine which depositions were being summarized or whether the hours expended are duplicative or unreasonable. Thus, the number of paralegal hours for this period shall be reduced by fifteen percent.[5] The number of hours devoted to "deposition summary" is 52.75 hours. Reduced by fifteen percent, the compensable number of hours is 44.85 hours. This represents a reduction of 7.90 hours.

#### e. <u>**Whether Time Billed for Trial Was Excessive**</u>

Yellow argues that the hours Ms. Felt billed during the four day trial is excessive. In addition, Yellow asserts that the time billed by Ms. Ballion and Mr. Penney was unnecessary and duplicative.

Ms. Felt sat second chair during the trial. She had depositions and exhibits ready when Mr. Anderson requested them. According to her billing, Ms. Felt also took notes during the trial. Ms. Felt never examined a witnesses or argued any motions. While the Court is mindful that Ms. Felt

---

[5]Yellow takes issue with many paralegal entries prior to May 28, 2001. The Court has already discounted any imprecise hours occurring before this date when it reduced the total number of hours up to the date of summary judgment by forty percent. It is not the Court's intention to "double discount" the paralegals' hours. <u>See</u> <u>Kennedy</u>, 2000 WL 290425 at *5 (citing <u>Blum</u>, 465 U.S. at 898-900) (unpublished opinion).

probably returned to the office each evening and prepared for the next day, her entries labeled "trial, trial prep" are not precise enough for the Court to determine if her billing for out of court time is unreasonable or duplicative. Therefore, Ms. Felt's trial hours must be reduced. A modest ten percent decrease is appropriate, given the fact that many of her hours were spent in court. The total number of hours Ms. Felt requested for the four day trial is 62.00 hours. These hours shall be reduced by 6.20 hours to reflect the imprecise billing for hours worked outside the courtroom.

Ms. Baillon billed 3.5 hours for attending closing arguments. Mr. Penney, a law clerk with Counsels' firm, billed 41.00 hours for the four day trial, the majority of which were for "[taking] notes at trial." Although having associates and law clerks "'sit in' on trials and aid lead counsel" is a good way to train young lawyers, "it does not follow necessarily that their time is 'reasonably expended' on behalf of the client." Anderson, 417 N.W.2d at 629 (citation omitted). This is especially true in this case, where an experienced partner sat second chair, took notes, and assisted Mr. Anderson during trial. See id. (remanding the case for reconsideration of attorneys' fees when Plaintiff had three attorneys at trial, but only one questioned witnesses and argued the case). Therefore, these 44.50 hours will be deducted from the petition.

### f. Whether the Number of Hours Billed for Preparation of the Fee Petition is Excessive

Yellow argues that billing 15.50 hours of partner time for preparation of the instant fee petition is excessive, especially in light of the fact that the fee petition and accompanying exhibits are almost identical to the fee petition submitted by Counsel in the Jones case. (Def. Ex. D.) The Court agrees. The instant fee petition is mostly a "cut and paste" version of the fee petition submitted in Jones. That petition was also prepared by Ms. Felt. The accompanying billing statements are copies of computer generated monthly bills which contain running totals for time spent on the instant case. In light of these facts, five hours is a more reasonable number of hours for this task. Therefore, Ms. Felt's hours spent on the fee petition will be reduced by 10.50 hours.

### g. Conclusion

In conclusion, the total number of hours billed by Counsel must be reduced by 319.18 hours. This represents deductions for hours expended on the unsuccessful and unrelated defamation and retaliation/reprisal claims, deductions for imprecise and possibly duplicative and unnecessary hours, and deductions for excessive hours billed.

**2. Whether Counsel's Hourly Rates are Reflective of the Local Legal Community**

"'Reasonable fees' in civil rights cases are to be calculated according the prevailing market rates in the relevant community." Blum, 465 U.S. at 895; Baufield, 831 F. Supp. at 721. It is appropriate to consider the experience, skill, and reputation of the fee-seeking attorney. See Hensley, 461 U.S. at 430 n.3. In this case, Yellow takes exception to the hourly rates charged by Mr. Anderson and Ms. Felt. Mr. Anderson submitted an affidavit stating that his hourly billing rate is $475.00 an hour. Ms. Felt submitted an affidavit stating that her hourly billing rate is $365.00 an hour. Both attorneys base their billing rates on their experience in the field of employment and discrimination law. Counsel has submitted affidavits from two experienced Minneapolis attorneys who concur that the rates charged by Mr. Anderson and Ms. Felt are reasonable rates within the Twin Cities legal community.

Yellow argues that the hourly rates charged by Counsel are excessive and submits an affidavit from an experienced Twin Cities attorney who states that the rates billed by Mr. Anderson and Ms. Felt are unreasonable for the Twin Cities market. Yellow asserts that rates between $180.00 and $250.00 an hour are more appropriate. Neither party has submitted any objective evidence of the customary billing rates in this market, such as a poll

or comparison survey. However, both parties have cited case law to support their positions.

At least one court has taken exception to the billings submitted by Counsels' firm. See Fields v. Minn. Police Recruitment Sys., No. EM 93-218 at 34 (Minn. 4th D. Nov. 8, 1996) (Amend. Find. Fact, Concl. Law & Order for J.) (speculating that Counsel could not realistically expect to obtain the hourly rate he was seeking). The Fields court posited that since Counsel's firm accepts cases on a contingent or fee shifting basis, Counsel's requested "market rates" probably were not the true reflection of hourly rates Counsel might bill a paying client. See id.

In addition, the hourly rates sought by Counsel are considerably higher than any rates awarded in the cited cases. Indeed, the highest rate cited by Counsel is $375.00 an hour for an attorney with twenty-four years experience working on a class action case. See Aubrecht v. Taylor Corp., No. 3-94-346 at 6 (D. Minn. Nov.1, 1995) (Mem. & Order). However, independent surveys "demonstrate that the rates commanded for class action litigation are higher than for general litigation." Fish v. St. Cloud State Univ., No. 6:96-155, 2001 WL 667778, at *2 (D. Minn. June 12, 2001) (awarding plaintiff's attorneys' fees in class action employment discrimination case at hourly rates between $225.00 and $350.00 an hour).

Counsel also cites Schuhmacher v. North Dakota Hosp. Ass'n, which can also be distinguished. In that case, plaintiff's counsel was awarded hourly billing rates between $150.00 and $345.00 an hour. However, in Schuhmacher, Plaintiff's counsel submitted "affidavits from several other Minneapolis law firms" to support their rates. Schuhmacher v. North Dakota Hosp. Ass'n, No. 91351at 5 (N.D. Grand Forks Cty. Ct. Jan 10, 1994) (Mem. Dec. Pl. Mot. Att'y Fees). That is not the case here. Counsel has submitted two affidavits from Minneapolis attorneys who contend that Counsel's rates are "reasonable." (Nichols Aff. ¶7, Schaefer Aff. ¶7.) Only one of those affidavits makes any reference to a billing rate in the community. In that affidavit, Mr. Lawrence P. Schaefer, Esq., states that the rates billed by Counsel are consistent with the rates charged by his firm. (Schaefer Aff. ¶5.) The affidavit submitted by Beach's counsel states that Twin Cities employment law attorneys with experience similar to that of Mr. Anderson and Ms. Felt charge $215.00 and $170.00 an hour, respectively. (Seaton Aff. ¶7.) However, in the absence of any supporting case law or objective information related to Twin Cities employment attorneys' hourly rates, the Court finds the rate comparisons submitted by both parties unpersuasive. As recently as 1999, a court in this District stated that $200.00 an hour was an excessive rate for employment law attorneys. See Bailey v. Runyon, 50 F. Supp.2d 891, 894 (D. Minn. 1999).

Moreover, two years ago, a Minnesota court found that an appropriate billing rate for Mr. Anderson was $300.00 an hour and an appropriate billing rate for Ms. Felt was $200.00 an hour. See Jones v. Yellow Freight, No. 19-C7-98-7880 at 4 (Minn. 1st D. Nov. 9, 1999). Jones was also a same-gender sex discrimination case against Yellow. That case resulted in a plaintiff's award of more than $1,000,000.00. Mr. Anderson and Ms. Felt have not justified rate increases of sixty-three percent and fifty-five percent respectively above their Jones' awards. Therefore, based on the submissions of both parties and the Court's observations of Counsels' work on the present case, which was competent, although not outstanding, Counsels' fees will be awarded based on the following hourly rates: Mr. Anderson, $300.00 an hour; Ms. Felt, $225.00 an hour;[6] Ms. Mullen, $225.00 an hour; and Ms. Baillon, $200.00 an hour.[7]

### 3. **Lodestar Calculation**

The lodestar calculation is derived by multiplying Counsels' reasonable hours by their reasonable hourly rates. Based on the above

---

[6]The Court acknowledges that Ms. Felt has been made a partner in her law firm since the Jones litigation.

[7]Yellow does not take exception to the billing rates of Ms. Mullen and Ms. Baillon. However, the Court has adjusted their rates downward so as to keep them in proportion with the reasonable rates allowed for Mr. Anderson and Ms. Felt. Furthermore, Counsel provided no documentation to support Ms. Mullen's or Ms. Baillon's respective requested rates of $350.00 and $240.00 an hour.

findings, the Court arrives at a lodestar calculation of $192,060.00. This is based on the following figures:

**Attorney Hours:**

Jeffery Anderson

| | | |
|---|---|---|
| | 166.40 | total original hours |
| – | 13.80 | forty percent deduction for time through May 2001 |
| – | 9.70 | deduction for imprecise billing from June 2001 to September 2001 |
| = | 142.90 | total reasonable hours |
| x | $300.00 | reasonable hourly rate |
| = | $42, 870.00 Total | |

Barbara Felt

| | | |
|---|---|---|
| | 550.60 | total original hours |
| – | 110.36 | forty percent deduction for time through May 2001 |
| – | 8.40 | deduction for imprecise billing from June 2001 to September 2001 |
| – | 6.20 | deduction for excessive trial hours |
| – | 10.50 | deduction for excessive fee petition hours |
| = | 415.14 | total reasonable hours |
| x | $225.00 | reasonable hourly rate |
| = | $93,406.50 Total | |

Joanne J. Mullen

| | | |
|---|---|---|
| | .90 | total original hours |
| – | .36 | forty percent deduction for time through May 2001 |
| = | .54 | total reasonable hours |
| x | $225.00 | reasonable hourly rate |
| = | $ 121.50 | Total |

Frances E. Baillon

| | | |
|---|---|---|
| | 59.55 | total original hours |
| – | .14 | forty percent deduction for time through May 2001 |
| – | 3.50 | deduction for excessive and duplicative trial hours |
| = | 55.91 | total reasonable hours |
| x | $200.00 | reasonable hourly rate |
| = | $11,182.00 | Total |

**Paralegal Hours:**[8]

Sandy Kluessendorf

| | | |
|---|---|---|
| | 375.25 | total original hours |
| – | 86.80 | forty percent deduction for time through May 2001 |
| – | 4.15 | deduction for imprecise billing from June 2001 to September 2001 |
| = | 284.30 | total reasonable hours |
| x | $125.00 | reasonable hourly rate |
| = | $35,537.50 | Total |

[8]Yellow asserted no objections to the billing rates for paralegals.

Andrea Hogan

| | | |
|---|---|---|
| | 16.75 | total original hours |
| – | 2.51 | deduction for imprecise billing from June 2001 to September 2001 |
| = | 14.24 | total reasonable hours |
| x | $130.00 | reasonable hourly rate |
| = | $ 1,851.20 | Total |

Shirley Kosek

| | | |
|---|---|---|
| | 8.25 | total original hours |
| – | 1.24 | deduction for imprecise billing from June 2001 to September 2001 |
| = | 7.01 | total reasonable hours |
| x | $130.00 | reasonable hourly rate |
| = | $ 911.30 | Total |

**Law Clerk Hours:**[9]

Brant Penney

| | | |
|---|---|---|
| | 123.20 | total original hours |
| – | 20.46 | forty percent deduction for time through May 2001 |
| – | 41.00 | deduction for excessive and duplicative trial hours |
| = | 61.74 | total reasonable hours |
| x | $100.00 | reasonable hourly rate |
| = | $ 6,174.00 | Total |

[9]Yellow asserted no objections to the billing rates for law clerks.

Ann Reishus

| | | |
|---|---|---|
| | .07 | total original hours |
| – | .01 | deduction for imprecise billing: "summarize depos." See Part II.d. (addressing problems with paralegals billing for "deposition summary") |
| = | .06 | total reasonable hours |
| x | $100.00 | reasonable hourly rate |
| = | $ 6.00 | Total |

**4. Lodestar Reduction**

In Hensley, the Supreme Court counseled that the most important factor for a court to consider in deciding whether to reduce or enhance the lodestar figure is the result obtained by the prevailing party in relation to his or her litigation objectives. Hensley, 461 U.S. at 434-36. When the primary purpose of the litigation is to recover monetary damages, courts assessing the result obtained must give consideration not only to the number of separate claims which were successful, but also to "the amount of damages awarded as compared to the amount sought." Riverside v. Rivera, 477 U.S. 561, 585 (1986); Ryther, 864 F. Supp. at 1533. When a party obtains only a "technical" victory, such as when a plaintiff who seeks a large monetary recovery obtains only nominal damages, the Supreme Court has held that "the only reasonable fee is usually no fee at all." Farrar v. Hobby, 506 U.S. 103, 115 (1992). Other factors to consider are whether the case is taken on a fixed fee or contingent basis; the awards in similar cases; the "undesirability" of the case; the

experience, reputation, and ability of the lawyers; and preclusion of other employment by counsel due to accepting the case. See Hensley, 461 U.S. at 430 n.3.

In the instant case, Beach urges the Court to adopt the position that he achieved a total victory because he prevailed on his MHRA claim, the only claim that went to trial. The Court declines to adopt this position. At trial, Beach sought $708,500.00 in damages. Beach was awarded $36,920.00. The Court declined to award punitive damages or damages for lost earnings and economic loss. The Court also declined to award treble damages. A five percent victory is not significant enough to justify the lodestar figure.

No injunctive or other non-monetary relief was granted. Therefore, this case is not one of a line of civil rights cases in which litigation will result in significant institutional-wide or society-wide benefits. Rather, by Beach's own admission the work environment at Yellow had substantially changed after the Jones case. Yellow has instituted company-wide changes which effectively ended the discriminatory actions of which Beach complained. Although attorneys' fees in a civil rights case will often be more than the modest award won by a plaintiff; in this case, the fee application does not accurately reflect "the relationship between the amount of the fee [requested] and the results obtained." See Bevan v. Honeywell, Inc., 118 F.3d 603, 613 (8th Cir. 1997) (quoting Hensley, 461 U.S. at 437) (brackets in original).

While the Court acknowledges that same-gender sexual harassment claims are relatively new, the Court is not persuaded that the issues presented in this case were novel or involved complex problems of proof. See Anderson, 417 N.W.2d at 629. To the contrary, the case hinged solely on the credibility of Beach and Yellow's management. See id. (remanding case where award of attorneys' fees was not supported by findings regarding the propriety of billing for three attorneys in a straightforward employee-employer discharge case). Since this was a bench trial, Counsel did not have to educate a jury regarding the law or the social implications of the suit. The Court is not susceptible to the prejudices one must often overcome when facing a jury. Moreover, Counsel tried a very similar case against Yellow in 1999. See Jones v. Yellow Freight, No. 19-C7-98-7880 (Minn. 1st D. Nov. 9, 1999). Counsel was familiar with Yellow, the people, the issues, and the law involved in this case. The excessive billing does not reflect the fact that this case did not have to be "created out of whole cloth."

Counsel's representation of Beach was adequate, but not outstanding. In fact, the key piece of evidence which warranted a decision in Beach's favor was not even presented until Beach's rebuttal testimony on the last day of trial. Counsel does not argue that undertaking this representation prevented them from taking other clients. The fact that Counsel took the case on a contingent basis will be offset by the fact that Counsel are being

compensated at reasonable present-day rates, not at rates commensurate with the time at which the services were rendered. See Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 325 (8th Cir. 1993). The award sought by Beach would produce a windfall for Counsel. Such a windfall is not the purpose of attorneys' fees. See Blum, 465 U.S. at 897. In light of the above factors, the lodestar figure will be reduced by fifteen percent. The results achieved do not justify a large award and no special circumstances based on the complexity of the litigation or performance of Counsel mitigate that decrease. Reducing the fees by fifteen percent results in a lodestar amount of $163,251.00. See Hensley, 461 U.S. at 440 (stating that a reduced fee "is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole").

**B. Costs**

The MHRA allows the court to award a prevailing party its costs associated with the litigation. See Minn. Stat. § 363.14, subd. 3. In federal courts, the award of costs is governed by 28 U.S.C. § 1920:

> A judge or clerk of court of the United States may tax as costs the following:
>
> (2) Fees of the clerk and marshal;
>
> (3) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (4) Fees and disbursements for printing and witnesses;
>
> (5) Fees for exemplification and copies of paper necessarily obtained for use in the case;

(6) Docket fees under section 1923 of this title;
(7) Compensation of court appointed experts, compensation of interpreter, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Petitions for costs must be carefully scrutinized by the court. See Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235 (1964).

Beach seeks $18,514.13 in costs. This figure represents charges for a number of items. Yellow takes exception to the following charges: the expert witness fee of Dr. Joel Peskay; the expert witness fee of Jan Schwartz; reimbursement for witness and mileage fees for a number of witnesses who never testified at trial; unsupported "investigative expenses"; the parking and mileage expenses for Counsel's law clerk, Brant Penney; miscellaneous trial expenses incurred after the trial ended; and computer assisted research. The Court will address each of these items below.

**1. Expert Witness Fees for Dr. Peskay**

Beach seeks $3248.50 for the expert opinion work and trial testimony of Dr. Peskay, Beach's forensic psychologist. Minnesota law provides for expert witness fees of up to $300.00 per day. See Gen. R. Prac. 127.3. Minnesota law also gives the court discretion to award reasonable fees and compensation for expert witnesses. See Minn. Stat § 357.25. However, federal law caps witness fees at $40.00 per day. See 28 U.S.C. § 1821(a)(1), (b). The same $40.00 limitation applies to expert witnesses. See Henkel v. Chicago, St.

Paul, Minneapolis & Omaha Ry., 284 U.S. 444, 446-47 (1932). Not surprisingly, Beach argues that Minnesota law controls and Yellow argues that federal law controls.

The allowance of expert fees under Minn. Stat. § 357.25 and Rule 127.3 is discretionary with the Court. See Gen. R. Prac. 127.3; Minn. Stat. § 357.25. "As such, that Section cannot vest litigants, in Federal Courts, with a substantive right to an award of expert costs which trumps the forty dollar limitation of Section 1821." Sphere Drake Ins. v. Trisko, 66 F. Supp. 2d 1088, 1092 (D. Minn. 1999), aff'd, 226 F.3d 951 (8th Cir. 2000) (agreeing with other courts that considered the Erie implications of the issue and found 28 U.S.C. § 1821 to be controlling). The Sphere Drake court stated that "[t]he majority view among the circuits holds that expert witness costs in federal courts are limited by 28 U.S.C. § 1821 and [t]here are no persuasive reasons for applying a different rule in diversity cases." Id. (quoting Murphy v. Amoco Prod. Co., 558 F. Supp. 591, 594 (D.N.D. 1983)) (brackets in original). Therefore, Dr. Peskay's fee for testifying will be reduced to $40.00 for the one day he testified.[10]

[10]It is unclear from the records what the $600.00 originally billed represents. It may be that Beach was billed for an extra day of testimony because Dr. Peskay received late notification that he would not be needed to testify, or it may be that Counsel has just enhanced Dr. Peskay's daily rate to $600.00 a day.

The next issue is whether Beach is entitled to reimbursement for Dr. Peskay's other charges. The rule traditionally followed by the federal courts is that the only properly reimbursed witness expenses are those for testifying, mileage, and subsistence outlined in 28 U.S.C. § 1821. See Paschall v. Kansas City Star Co., 695 F.2d 322, 338 (8th Cir. 1982) (citation omitted); Hill v. Gonzalez, 531 F.R.D. 1, 3 (D. Minn. 1971) (restating the general rule and disallowing reimbursement for expert testing). However, the Eighth Circuit has authorized modification of that rule and payment of expert fees when, in the trial court's opinion, the "expert's testimony was crucial to the resolution of the case." Paschall, 695 F.2d at 338; Heigel v. Hot Springs, 771 F.2d 358, 360 (8th Cir. 1985); Welsch v. Likins, 68 F.R.D. 589, 597 (D. Minn. 1975) (reasoning that while expert witness fees are not usually recoverable, the trial court has discretion to award such fees when the witness was "indispensable" to the trial).

In the instant case, the Court has no trouble stating that Dr. Peskay's testimony was not necessary or critical to the issues decided in the case. In fact, the Court discounted Dr. Peskay's testimony. (Find. Fact, Concl. Law, & Order for J. ¶74.) Therefore, any expenses related to Dr. Peskay's services are not compensable as costs. Accordingly, the amount requested for Dr. Peskay's services will be reduced by a total of $3208.50.

### 2. Expert Witness Fees for Jan Schwartz

Jan Schwartz testified in her capacity as Beach's psychologist. Beach argues that Ms. Schwartz testified as an expert; however, Beach's Witness List does not identify her as an expert. Rather, the list identifies only one expert, Dr. Peskay. (Doc. No. 147 at 6, 7.) Counsel's billing requests reimbursement of $245.00 for the services of Jan Schwartz. Ms. Schwartz has also submitted a bill for $5.00 in mileage.

Ms. Schwartz's bill states that she charged Counsel $200.00 for services as an "expert witness for Allen Beach." It is unclear from this statement whether this bill was for time spent at trial. However, Counsels' Petition states that this represents reimbursement for Ms. Schwartz's testimony at trial. (Pl. Pet. at 17 n.9). For the reasons enumerated above, Beach is entitled only to reimbursement for mileage costs and a $40.00 witness fee for Ms. Schwartz's trial testimony. Therefore, the total amount of costs attributed to Ms. Schwartz will be reduced by $200.00.

### 3. Witness and Mileage Fees for Witnesses Who Never Testified

Beach seeks reimbursement for the costs and fees of witnesses who never testified at trial. This is not a reasonable request. As a general rule, no witness fee may be taxed for people who come to court but do not testify. See 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal

Practice & Procedure § 2678 (3d ed. 1998). This presumption may be rebutted. See id. However, Beach has offered no justification for subpoenaing witnesses he never called. To the extent that Beach had the good faith intention to call these witnesses, but later decided not to call them, expenses related to their expected testimony are still not reasonable because the witness list demonstrates that their testimony would merely have been cumulative of testimony already heard. (Doc. No. 147.) See Linneman Const., Inc. v. Montana Dakota Util. Co., 504 F.2d 1365, 1372 (8th Cir. 1974) (stating that a court need only allow expenses for the number of witnesses it deems reasonable). Absent any explanation, it is unreasonable to have so many witnesses in court who will offer substantially the same testimony. See id. These costs were not reasonably expended on behalf of Beach and are not compensable. Accordingly, Beach's requested costs will be reduced by $164.00 to account for the expenses related to non-testifying witnesses Dave Buntjer, Lynn Raph, and Chuck Jaworski.

**4. Unsupported "Investigative Expenses"**

Yellow objects to Beach's request for $1617.92 for "investigative expenses" as they relate to services provided by Investigative and Legal Assistance, Inc. Yellow contends that these bills are too imprecise to justify reimbursement. Yellow suggests that all invoices should be rejected with the exception of the invoice dated September 28, 2001, which should be

reimbursed at only .571 of the billed amount.

While the Court finds some merit in Yellow's argument, the Court does not find that the bills suffer from inordinate imprecision. Therefore, a ten percent reduction in the amount billed by Investigative and Legal Assistance, Inc. is appropriate because the otherwise detailed bills failed, for the most part, to identify which witnesses they were investigating. It is therefore possible that some of the time was spent investigating witnesses who never testified or who had information solely related to Beach's unsuccessful claims. Counsel had the opportunity to clarify these billings and failed to do so. Accordingly, the amount for investigative expenses will be reduced by $161.79.

#### 5. Parking and Mileage for Law Clerk Brant Penney

The Court has already found that Mr. Penney's work at trial was not reasonably expended on behalf of Beach and that it was duplicative of work done by Ms. Felt. Therefore, it follows that the $30.60 requested for Mr. Penney's parking is not a compensable expense. The costs will be reduced accordingly.

#### 6. Miscellaneous Trial Expenses Incurred After the Trial Ended

Counsel seeks reimbursement for the "trial expenses" of Mr. Anderson. Included in this billing are expenses totaling $13.91 for expenses incurred in the week after the trial ended. Counsel has provided no

explanation for these curious entries and, therefore, the total amount of costs will be reduced by $13.91.

**7. Computer Assisted Research**

Yellow objects to Beach's request for reimbursement for computer assisted research. As the court in Ryther, a case cited by Beach, stated, "It is well settled that computer-aided research, 'like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost.'" Ryther, 864 F. Supp. at 1534; see also Standley, 5 F.3d at 325. Therefore, Counsels' request for $2319.26 in computer research expenses will be deducted from the costs awarded.

**8. Statutory Costs**

Under Minn. Stat. § 549.02, a prevailing party who is awarded over $100.00 in monetary damages in an action commenced in a Minnesota state court shall be awarded $200.00 in costs and $5.50 for the cost of filing a satisfaction of judgment. See Minn. Stat. § 549.02. Beach seeks to recover $205.00 under this statute because this case was removed from Dakota County District Court on March 27, 2000.

In federal court, taxation of costs is controlled by 28 U.S.C. § 1920. Section 1920 enumerates the costs which may be properly reimbursed, as discussed in Part II. B. n.17 of this Order. "[W]hen Congress has prescribed . . . [what may] be allowed as costs, its enactment controls." See Henkel, 284 U.S.

at 446. The statutory costs Beach seeks to recover are not among the enumerated costs and must, therefore, be denied. $205.00 will be deducted from Beach's costs.

For the above-stated reasons, the total amount of costs will be reduced by $6303.06. This results in a total award of costs of $12,211.07.

Based on the foregoing, and all of the records, files and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Plaintiff's Petition for Costs and Fees (Doc. No. 160) is **GRANTED IN PART and DENIED IN PART** as set forth fully in the body of this Order;

(2) Plaintiff's Request for Attorneys' Fees is **GRANTED** in the amount of $163,251.00;

(3) Plaintiff's Request for Costs is **GRANTED** in the amount of $12,211.07; and

(4) Defendants are hereby **ORDERED** to remit to Plaintiff a total amount of $175,462.07 for attorneys' fees and costs.

DATED: December 10, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500